James R. **LEARNED**, Leah P. Golden, Kansas-Nebraska Natural Gas Company, Inc., Petroleum Exploration, Inc., R. Hal Johnson and Griffin and Burnett, Inc., Plaintiffs,

v.

James G. **WATT**, Secretary of the Interior, and Maxwell T. Lieurance, Wyoming State Director of the Bureau of Land Management, Department of the Interior, Defendants,

**and**

Sierra Club; the Wilderness Society; Izaak Walton League; Jackson Hole Alliance for Responsible Planning; and National Parks and Conservation Association, Defendants-Intervenors.

No. C81–009K.

United States District Court, D. Wyoming.

Dec. 23, 1981.

## MEMORANDUM OPINION

KERR, District Judge.

This action is before the Court upon an appeal from the Interior Board of Land Appeals (IBLA). Plaintiffs were applicants for oil and gas leases on certain lands located north of the 11th Standard Parallel in Teton County, Wyoming. The applications were filed pursuant to the Mineral Lands Leasing Act of 1920, 30 U.S.C. § 181 et seq., but were denied by the Wyoming Bureau of Land Management office (BLM). The basis for the BLM rejection was a policy directive known as the "Krug memorandum." In their Complaint, plaintiffs ask this Court to order the Secretary of the Interior (Secretary) to issue leases to them, or, alternatively, to order the Secretary to reconsider the offers in view of plaintiffs' interpretation that Congress intended that mineral development take place in the area in question.

The Krug memorandum was issued and published in the Federal Register in 1947. J. A. Krug was Secretary of the Interior in 1947 and he was concerned about oil and gas leasing in the Jackson Hole area of Teton County, Wyoming. The area in question is world-renowned for its beauty and the Secretary doubtless took this fact into consideration in his decision. In an effort to be fully advised, the Secretary sent letters to several different groups and individuals representing widely divergent interest groups, from oil and gas companies to environmentalists. The letters invited comment on the proposed leasing. Responses were made and three months later the Secretary issued his decision in the form of a memorandum.

In summary, the Krug memorandum states that land located south of the 11th Standard Parallel, with some exceptions, will be subject to oil and gas leasing. The area north of the 11th Standard Parallel was withdrawn from leasing with a few exceptions. The lands in question in this case are located north of the 11th Standard Parallel. Although it is currently under review, the Krug memorandum is still operative in the Department of the Interior.

The memorandum represents an obvious compromise of conflicting interests. In reviewing the area covered by the memorandum as a whole, this Court cannot say that the memorandum is contrary to the statutes, regulations and Congressional intent.

Congress withdrew the lands in question under the Wilderness Act of 1964, 16 U.S.C. § 1131 et seq. Although it is clear that the intent of Congress was to incorporate the mineral leasing laws into the Wilderness Act of 1964 and that wilderness designation did not bar mineral leasing per se, the mem-

orandum actually achieves the goal of Congress. The memorandum is not an actual withdrawal in accordance with statutory prerequisites such as the now repealed Pickett Act, but the memorandum was still an exercise of the Secretary's discretionary power and authority and is valid.

The analysis of Judge Anderson in *State of Utah v. Andrus*, 486 F.Supp. 995 (Utah 1979) is particularly compelling under the facts of this case. Although factually different from the current action, Judge Anderson noted in his opinion that balance and equity are the key guidelines in deciding cases of this nature. The conflicting interests in this case make it almost impossible to apply all of these interests and uses to the same piece of land. Recognizing this fact, Krug attempted to find a suitable compromise for all of the competing interests. An overview of the lands north and south of the 11th Standard Parallel reveals that, in the broad picture, a true compromise was reached. Multiple use of the land is occurring in accordance with the dictates of Congress.

This Court holds that the decision of the IBLA is not arbitrary, capricious, nor an abuse of discretion. It is the function of the IBLA to determine whether or not established policy is being followed within the department. It is not the Board's function to re-formulate that policy.

This Court finds that the Krug memorandum is not contrary to law. The actions of the BLM in dismissing the lease offers of the plaintiffs were not contrary to law. 43 C.F.R. § 2091.1(a) requires the Secretary or his agents to take prompt action on any lease applications submitted by offerors such as the plaintiffs in this action. The dismissal by the BLM is the only action which could have been taken under the circumstances.

Counsel for plaintiffs have stated that the relief sought by plaintiffs is not a declaration that the Krug memorandum is contrary to law and Congressional intent. Rather, they ask in their Complaint that the non-existent leases for which offers were filed be declared to exist and that said leases be issued to plaintiffs. Such relief is beyond the power of this Court. The actions of the Secretary in deciding whether or not to lease a particular area of land are largely discretionary. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Duesing v. Udall*, 350 F.2d 748 (1965).

In oral argument and in their Complaint, plaintiffs further requested that the Secretary be ordered by this Court to reconsider their lease offers. In view of the fact that this Court has found that the Krug memorandum does not violate Congressional intent, this Court declines to so order the relief requested by plaintiffs. The memorandum is currently under review and the Secretary has the power to change the policy as set forth by Secretary Krug if he so desires. It is the function of the Secretary to establish such discretionary policy and such policy decisions are not a function of this Court.

An Order will be entered affirming the decision of the Interior Board of Land Appeals.